UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MADALEINE MULREY,

    Plaintiff,

                                      Case No. 21-C-_____

-vs-

WISCONSIN OFFICE OF LAWYER
REGULATION and JAMES EVENSON,
in his capacity as Referee, or any
successor to him in that capacity,

    Defendants.

## COMPLAINT

Now comes the Plaintiff, MADALEINE MULREY, by and through her attorney Gary Grass, SIDDIQUE LAW, LLC, and as and for its Complaint against the Defendant, states as follows:

### SUMMARY

1. Plaintiff attorney sues the state attorney disciplinary agency and another state officer for disability discrimination in addressing a client complaint against her. Plaintiff has suffered physical, reputational and emotional harm and risks undue discipline from the agency's refusal to consider modifying its procedures to allow for her posttraumatic stress disorder and other conditions.

## JURISDICTION AND VENUE

2. This action is brought under Title II of the Americans with Disabilities Act of 1990 (ADA), Pub.L. 110-325, 104 Stat. 327, 42 U.S.C. ch. 126 §§ 12101 et seq., as amended by the ADA Amendments Act of 2008 (ADAAA). This court therefore has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue in this district is appropriate under 28 U.S.C. § 1391(b)(1) and (c)(2) because defendant agency is present in the district, and no out-of-state defendants are joined.

## PARTIES

4. Plaintiff is a Wisconsin attorney who has maintained her permanent residence in Wisconsin despite being semi-homeless and having been forced to live with friends and relatives outside the state since March 2019.

5. Plaintiff is and has been at all times relevant hereto a person with a "disability" as that term is defined in section 3 of the ADA (42 U.S.C. s. 12102(1)). She has actively suffered from disabilities since May 2018, including but not limited to post traumatic stress disorder ("PTSD").

6. In 2000, the Wisconsin Supreme Court created the Office of Lawyer Regulation ("OLR") and Referees as part of an integrated system of officers and officers to regulate the bar and oversee professional discipline of attorneys. As such, the OLR and office of referee are "public entit[ies]" as defined by section 201 of the ADA.

7. James Evenson was appointed a referee in a professional disciplinary matter against Mulrey.

8. The attorney disciplinary process described in Chapter 22 of the Wisconsin Supreme Court Rules ("the process") is the core "service[], program[] or activit[y]" of the OLR, as that phrase is used in 42 U.S.C. s. 12132. The process as a whole benefits the legal profession, clients and the public. Included in the process are procedural protections that benefit complaining parties and attorneys accused of misconduct.

9. Plaintiff is "qualified person with a disability", as that term is defined in section 201 of the ADA (42 U.S.C. s. 12131(2)), with respect to the services, programs, and activities provided by the OLR and referees. Specifically, she was a qualified person to receive the benefits thereof when she was a grievant in the process she initiated against Tony Delyea, and a respondent in the process initiated by Kyle Herman against her, described hereinbelow.

10. Mulrey's disabilites have made receipt of these benefits extremely difficult, especially because the OLR process in both cases is an especially strong trigger for her PTSD. She particularly cannot meet the burden of defending herself in the process without lengthy deadline extensions or some other suitable accommodation.

## BACKGROUND

11. From 2017-2018, Mulrey shared a house with fellow attorney Anthony Delyea ("Delyea"). The two had separated living and working areas. In 2017, Mulrey became a witness against Delyea in a family court matter and he became increasingly hostile towards her. In 2018, he became extremely abusive, sabotaging two cases in which he represented Mulrey, and terrorizing her until she first abandoned her home office and then was ultimately forced to flee the state.

12. Mulrey made various contemporaneous reports to authorities including the local police regarding Delyea's actions. Mulrey obtained a restraining order and domestic abuse injunction and made repeated unsuccessful efforts to obtain protection from the Sheriff's Department, including by seeking judicial enforcement, so that she could re-enter her home and remove her property and her legal files. She received virtually no help nor constructive responses from official authorities.

13. Mulrey's traumatic experience became a trigger for her PTSD, which she actively suffered when attempting to recount events related to her abuse, her inability to obtain a proper response from authorities, and her related loss of property and access to client files.

14. Severely constrained in her ability to practice, and without a stable residence, Mulrey consumed what savings she had and ended up staying with a friend in Lawton Oklahoma, Mulrey knows virtually no one in Oklahoma and her displacement there makes access to resources extremely difficult.

15. In November 2020, she was taken out of traveling veteran's status, discharged from the VA Hospital in Madison, and unable to obtain medication, treatment, or medical records (other than services at the local emergency room) until April 20, 2021, when the VA assigned her a local provider. Mulrey has arranged for the soonest available intake appointment, on June 10, 2021, which she has been told is necessary before she can possibly see the physician who would be responsible to provide a letter regarding necessary ADA accommodations.

16. The conditions above constituted a hardship that included and compounded difficulties responding to OLR requests for information that stemmed substantially and primarily from her disability.

17. On January 3, 2018, Mulrey was engaged by Kyle Herman to address two municipal citations he had received. She met with the assistant city attorney who offered to hold the case open, and dismiss or amend the charges after a year of good behavior. Mulrey encouraged Herman to accept the offer.

18. In May and June 2018, Mulrey missed two appearances in the case. Both were within 24 hours of traumas that made focus on her professional responsibilities virtually impossible for someone with her disability. This led to a default judgment being issued on June 28, 2018. Neither Mulrey nor her client received written notice of the default. Mulrey belatedly followed up and learned of the default sometime around the end of August 2018.

19. Mulrey advised Herman that by accepting the offer earlier proffered by the city, he would likely avoid any objection to reopening and achieve an ideal result. She confirmed his intentions on September 28, 2018. She contacted the assistant city

6

Case 2:21-cv-00603-NJ    Filed 05/13/21    Page 5 of 20    Document 1

attorney, who called back roughly two weeks later and stated her non-objection to this plan but asked that the motion to reopen be deferred three to four additional weeks until to facilitate assignment of successor counsel.

20. In November 2018, Mulrey attempted to have the matter reopened by faxing a motion to reopen to the court. On information and belief, the fax was received but was not docketed for lack of an accompanying filing fee.

21. On February 1, 2019, Herman spoke to the city attorney's office directly regarding his case, and then called Mulrey. Upon hearing that the case had apparently not been reopened, Mulrey offered to file to again seek to reopen the judgment. Instead, Herman discharged her and she sent him a final bill.

22. Herman subsequently reopened the municipal case on his own and was able to obtain the same resolution that Mulrey had negotiated for him with the City Attorney.

EVENTS

23. On June 6 and June 7, 2018, Mulrey visited the OLR to initiate a complaint against Delyea in person, having learned that Delyea was eavesdropping upon her. Mulrey met for several hours with Cynthia Schalley and provided documents in support of her claims. Mulrey was told afterwards to (re-)initiate her grievance by telephone, upon which new staff would be assigned (which Mulrey did).

24. Mulrey's grievance against Delyea identified a variety of unethical acts and omissions on Delyea's parts, including interfering with her access to her files,

initiating frivolous and vexatious legal process against her (and doing so while still representing her in other matters), and engaging in criminal and other misconduct.

25. Kathryn Galarowicz was assigned as an "intake investigator" with respect to Mulrey's grievance against Delyea. On October 16, 2018, Mulrey called the OLR and spoke to Galarowicz, identifying the numerous documents she had provided. Galarowicz responded by email later that day that she had located the documents and would consider them. Mulrey continued to send Galarowicz unsolicited documentation of her claims into that November.

26. Mulrey did not receive a copy of Delyea's response to the grievance, nor a summary thereof, and was not given an opportunity to respond. Mulrey has tried to remain continuously accessible to the OLR by email, and has maintained reliable service apart from brief periods when she has been between cities or during outages from severe weather or other causes. She has until recently been reachable by the phone number listed with the state bar. While moving, she has frequently updated her address with the OLR.

27. So far as Mulrey is aware, the OLR never attempted to contact her for any further input into the case, nor to report its progress. So far as she is aware, either her complaint was never fully acted upon, or the OLR resolved her grievance against Delyea without discipline.

28. On information and belief, neither Delyea nor Herman has any disability.

29. On February 11, 2019, Herman complained to the OLR that Mulrey had mishandled his case.

30. On or before March 1, 2019, Herman's case against Mulrey was assigned to Jonathan Zeisser to conduct intake. Zeisser emailed Mulrey on March 1, seeking a response by March 15. Mulrey received a copy of the grievance which Zeisser summarized as giving rise to issues regarding three potential deficiencies: (1) her failing to appear twice in his municipal case, not reporting the default judgment, and taking no action from June 2018 to January 2019; (2) her leaving his file, and those of other clients with a third party; and (3) her failure to send itemized bills or any refund due at the end of representation.

31. Mulrey's performance in the Herman case had been punctuated with episodes of excusable neglect, and it could be credibly argued that her performance was deficient. Regardless, because she had no prior discipline and Herman emerged without harm, a case of this nature would typically result in the OLR deciding early in the process not to seek any discipline.

32. After requesting and receiving a short extension, Mulrey responded, Mulrey's responses to Zeisser disclosed that an "escalating situation" with Delyea had led her to obtain a domestic abuse injunction against him, that he had locked her out of her home and office, destroyed or stolen some of her client's files, and had filed a spurious eviction action against her.

33. On April 16, 2019, Kenneth Broderick was assigned as investigator. By letter dated April 23, 2019, Broderick sought Mulrey's further response to the grievance by May 16. In addition to the grievance, the letter included 19 questions

9

from Broderick and nearly 100 pages of attachments. On May 2, Mulrey reported that she was relocating and could not receive the letter and requested it be emailed. She received the email letter that day.

34. On May 13, 2019, Mulrey called the OLR and asked Broderick for additional time to respond. Broderick emailed her that she now had until May 31. On June 3, 2019, Mulrey called the OLR and asked Broderick for additional time to respond because she lacked reliable internet access. Broderick told her that she now had until June 17.

35. Although Mulrey's extension requests to this point did not mention her PTSD, they were motivated in part by her instinct to avoid recollecting her trauma. Where Mulrey had other good cause for an extension, she typically cited that cause rather than her PTSD. This was in itself a manifestation of her PTSD, in that victims of trauma often go great lengths to avoid the painful experience of recounting it.

36. Mulrey composed a 29-page response which separately responded to the original grievance and to Broderick's questions and attempted to email it on June 17, 2019, but it was not received. (She later learned that the email had been conserved in her gmail outbox, which was a circumstance completely new to her.)

37. Sometime between June 17 and 24, 2019, Mulrey called the OLR and spoke to Broderick. In the phone call, she discussed how, in order to respond to the allegations against her, she was forced to recall events related to her abuse by Delyea, unresponsiveness of local authorities, and loss of her home and property, and it was thus traumatic for her to have to write the account of these events. This was at least the fifth time she had explained to the OLR (to Schalley, Galarowicz, Zeisser and

10

Case 2:21-cv-00603-NJ   Filed 05/13/21   Page 9 of 20   Document 1

Broderick) how being overwhelmed by these events contributed to her difficulty responding.

38.     A reasonable person in a public position subject to the ADA, having reviewed Mulrey's partial description to Zeisser of Delyea's abuse, and having been told directly that her trauma was limiting her ability to respond, should, on these bases alone, have recognized the likelihood that she was entitled to an accommodation for PTSD. Furthermore, the OLR must frequently respond to complaints against attorneys whose performance has been affected by medical or psychological impairments, so that some awareness of these issues should be expected from any OLR investigator.

39.     On June 24, 2019, Broderick wrote and emailed her, seeking a response by July 5, 2019 and threatening to invoke suspension for noncompliance. On June 26, Mulrey left Broderick a voicemail, stating she had received the letter, explaining her difficulty emailing the file, and promising to mail a hard copy or thumb drive.

40.     In late June and early July, 2019, Mulrey received oral surgery and was unable to remain at her temporary residence in Lawton, Oklahoma during her recovery because the owner of the home was himself traveling. On July 1, 2019 she mailed a copy of her response to the OLR, but it was not apparently received.

41.     On July 23, 2019, the OLR filed a motion with the Wisconsin Supreme Court that an order to show cause be issued as to why Mulrey's law license should not be temporarily suspended for noncompliance with its investigation. The order was granted on July 25. and issued by certified mail the following day. It was returned

11

Case 2:21-cv-00603-NJ    Filed 05/13/21    Page 10 of 20    Document 1

August 5, 2019 as unable to be forwarded. But for her disability, the motion would not have been filed.

42. On August 6, 2019, Mulrey emailed Broderick her 29-page response which included her response to the grievance. The response noted once that she had been "in extremis" during events she recounted, and once again that she had been and remained in this state due to Delyea's conduct, as of the time of the communication. Moreover, the attachment included further detailed descriptions of Delyea's abuse, labeled as such. A reasonable reader of this document may reasonably have inferred that Mulrey's having been traumatized by these events constituted a substantial part of her being "in extremis."

43. Following Mulrey's response, the OLR sought to withdraw its motion to the supreme court and that matter was dismissed.

44. On January 3, 2020, Broderick issued and sent Mulrey his "preliminary staff investigative report" which found she had violated several rules applicable to attorneys, by: (1) missing two court appearances and failing to file a motion to re-open; (2) failing to keep Herman informed; (3) lying to Herman by stating she had filed a motion to re-open; and (4) willfully failing to file a timely written response to the grievance.

45. Broderick gave Mulrey through Jan 17, 2020 to respond to the report. On January 14, 2020, she contacted him seeking an additional 30 days. He agreed to extend the deadline by two weeks. On February 3, she repeated her request for more time, citing the effects of a back injury. Broderick refused.

46. Mulrey suffered the back injury when Delyea had tripped her in May 2018. Her treatment providers directed that she not spend more than 15-20 minutes at a computer keyboard because it counteracted her treatment. The interaction of the back injury and the PTSD made Mulrey's self-defense in the OLR matter extremely difficult after she resumed treatment in January 2020, because periods of clarity allowed by her PTSD could not be fully exploited before her treatment provider's orders directed her to cease using her computer.

47. On February 17, 2020, Broderick issued and sent Mulrey a "consent private reprimand offer" which included a lengthy series of legal stipulations Mulrey could make to have the matter resolved with a private reprimand. He allowed her 10 days to respond.

48. The offer of a private reprimand was based on the conclusions in the investigative report that Mulrey severely disputed, and for which she had reasonable explanations and counter-arguments that she could have raised given more time. Furthermore, it found misconduct in the untimeliness of her responses that were attributable in substantial part to her disability.[1]

49. Had Mulrey been allowed to submit her additional evidence, procedural rules would have required its consideration and later presentation to the Preliminary Review Committee ("PRC") at that stage of the process, which may have affected the progress and outcome of the case.

---

[1] This interprets the report as chastising Mulrey for failing to respond to Broderick's questions, but what it literally states is that her response to the *grievance* was untimely. She provided such a response without having been directed to do so by the OLR.

50. Events such as the OLR's preliminary report and the content of the stipulations offered to her as a condition for resolution, and the short deadlines demanded, all compounded her trauma, and have tended to make the OLR itself a trigger for her PTSD.

51. Mulrey would have considered a modest sanction but for the OLR's insistence that she swear falsely to serious accusations against her that were not true, and would have grave repercussions on her rights and reputation. For example, Mulrey would have to stipulate: (1) that she lied to Herman, when she had not done so; and (2) that she had ample opportunity to recover her property and client files, a false supposition not directly related to any of the recommended charges, which would have subjected her to complaints from clients and made it impossible for her to seek relief against Delyea.

52. In March 2020, all matters related to the Herman grievance were slowed due to the rapid expansion of Covid-19 and precipitous responses nationwide.

53. On April 7, 2020, Mulrey again emailed Broderick to request more time, this time specifically citing the ADA. She stated, in relevant part:

> I am writing to formally request a reasonable accommodation pursuant to the Americans with Disabilities Act, Title II Regulations, Section 35.160 (a) (1). Although I am otherwise qualified to respond to the above referenced matter, I have been limited in my ability to do so within the given deadlines, not only now, but from the inception of this inquiry, as a result of my disability. Therefore, I will need accommodations in order to complete the task of preparing, and submitting a response to the Preliminary Staff Investigative Report.
>
> I know from my experience that additional time to respond to this matter would be a sufficient accommodation.

> Previously, you stated in your email dated 4 February 2020 that there is no requirement for a respondent to submit comments on a Preliminary Staff Investigative Report. However, I do not wish to waive my right to due process in this matter, as proceeding otherwise would amount to a deprivation of the property rights, and interests in my law license. (42 USC 1983)
>
> If you would like medical verification of my disability, I can provide you with the appropriate documents upon your request. However, due to the fact that this request for an accommodation requires; 1) the disclosure of a disability, 2) possibly the submission of confidential medical information as verification, I would ask you, as an investigator, as well as the OLR, to maintain strict confidentiality regarding this request for an accommodation, along with any future submission of medical verification.
>
> Thank you for your attention to this matter. I would appreciate a written response to this request at your earliest convenience. I look forward to cooperating with you to find an effective solution.

54. Broderick received and responded to this email, but did not engage in the interactive process or respond to the accommodation request at all. The entire body of his responsive consisted of the following paragraph:

> Thank you for your email. While you mention the preliminary staff investigative report that was sent to you on January 3, 2020, your inquiry is silent as to your intentions regarding the consent private reprimand offer sent to you on February 17, 2020. Due process will attach in the event OLR obtains cause to proceed and files a public disciplinary action. In the absence of your consent to the proposed private reprimand, we will seek cause to proceed from the Preliminary Review Committee. If cause to proceed is obtained, and a public disciplinary action then filed, you will have all rights to defend as allowed for in Chapter 22 of the Supreme Court Rules.

55. Over the following six months, the case was presented to the PRC which found cause to proceed. The same offer of a consensual reprimand was repeated in July 2020 and rejected.

15

56. Kim Kluck was assigned to litigate the matter for the OLR. On October 8, 2020, the OLR filed its complaint against Mulrey in the Wisconsin Supreme Court. She was served personally on December 23, 2020. Evenson was appointed as referee on January 12, 2021, the same day an Answer to the Complaint was due.

57. On January 22, 2021, Mulrey emailed Kluck, requesting more time as an accommodation pursuant to the ADA, stating, in relevant part:

> I am writing to formally request a reasonable accommodation pursuant to the Americans with Disabilities Act, Title II Regulations, Section 35.160 (a) (1). Although I am otherwise qualified to respond to the above referenced matter, I have been limited in my ability to do so within the given deadlines, not only now, but from the inception of this inquiry, as a result of my disability. Therefore, I will need accommodations in order to complete the task of responding to the complaint, and participating in the related proceedings.
>
> I know from my experience that additional time to respond to this matter would be a sufficient accommodation.
>
> If you would like medical verification of my disability, I can provide you with the appropriate documents upon your request. However, due to the fact that this request for an accommodation requires; 1) the disclosure of a disability, 2) the submission of confidential medical information as verification, I would ask you, as an investigator, as well as the OLR, to maintain strict confidentiality regarding this request for an accommodation, along with any future submission of medical verification.
>
> Thank you for your attention to this matter. I would appreciate a written response to this request at your earliest convenience. I look forward to cooperating with you to find an effective solution

58. In response, the OLR did not engage in the interactive process to determine what accommodation was required. Instead, Kluck stated that she would not object to the timeliness of an answer if provided within the next 25 days, and that

16

Case 2:21-cv-00603-NJ    Filed 05/13/21    Page 15 of 20    Document 1

the OLR would not consider any further requests for additional time. Rather, Mulrey would have to make any motion for additional time to the referee.

59. On February 9, 2021 a telephone conference was conducted before Evenson at which Mulrey repeated her request for time as an ADA accommodation, and Kluck repeated in essence what was stated in her letter. Evenson continued the matter to March 2, 2021.

60. On February 25, 2021, Kluck filed a motion for default judgment against Mulrey for failure to submit an Answer.

61. On March 1, 2021 Mulrey made another request for accommodation emailing both Evenson and Kluck:

> I am again writing to formally request a reasonable accommodation pursuant to the Americans with Disabilities Act, Title II Regulations, Section 35.160 (a) (1). Although I am otherwise qualified to respond to the above referenced matter, I have been limited in my ability to do so within the given deadlines, not only now, but from the inception of this inquiry, as a result of my disability. Therefore, I will need accommodations in order to complete the task of responding to the complaint, and participating in the related proceedings.
>
> I know from my experience that additional time to respond to this matter would be a sufficient accommodation.
>
> If you would like medical verification of my disability, I can provide you with the appropriate documents upon your request. However, due to the fact that this request for an accommodation requires; 1) the disclosure of a disability, 2) the submission of confidential medical information as verification, I would ask the court to seal any confidential medical information, as well as for the OLR, to maintain strict confidentiality regarding this request for an accommodation, along with any future submission of medical verification.
>
> Regarding counsel's recent motion requesting a default judgement in the above referenced matter, Respondent is unable to respond due to

17

Case 2:21-cv-00603-NJ   Filed 05/13/21   Page 16 of 20   Document 1

an unaccomodated disability. Any failure of Respondent to perform as expected, substantially, or procedurally, has been attributable to an unaccomodated disability.

Although the the rules of pleading do not specifically allow a Respondent to reserve the right to amend responses, or supplement defenses, Respondent seeks this right as an accommodation to her (presently) untreated disabilities.

Thank you for your attention to this matter. I look forward to cooperating with you to find an effective solution.

62. On March 2, 2021, Referee Evenson ordered Mulrey to supply by March 18, 2021 "any documentation that she wishes to be considered" at a hearing on default judgment. Evenson did not specify what documentation would be considered persuasive by the court, or that any was being sought by the tribunal *per se*. This was not a permissible engagement in the interactive process because it failed to specify needed documentation for an accommodation to be supplied, and also made no assurance of confidentiality of submitted medical documents.

63. The hearing was continued and the documentation deadline extended to March 23, 2021, at which time Mulrey sent the only relevant document she had: an estremely terse year-old document showing stating her need for "extra time to complete tasks." Mulrey provided this accompanying truthful explanation:

> Please find attached a letter from Dr. Eileen Ahearn, my previous health care provider at the William Middleton VA Hospital, in Madison, Wisconsin. My intention was to submit more appropriate documentation from a current health care provider, however as of this date, staff at the Oklahoma City VA Medical Center have yet to assign my case to a local Community Care provider, not withstanding the fact that the initial consult was placed at the time I was discharged from Dr. Ahearn's care, in October 2020. As a result of this situation I have been able to access neither medical treatment, nor medication, in addition to obtaining the requested documentation from a current provider.

18

Case 2:21-cv-00603-NJ   Filed 05/13/21   Page 17 of 20   Document 1

> I would ask you to accept this letter as the basis for my request for an accommodation, until such time as I am assigned to a local Community Care provider. Thank you for your consideration in this matter.

64. On May 10, 2921, Referee Evenson found Mulrey to be in default, and indicated he would, without any further hearing or input from Mulrey, be sending his report and recommendation to the Wisconsin Supreme Court "soon."

65. Evenson's order was based on an incorrect understanding of the ADA. Specifically, he sidestepped Mulrey's ADA concerns by opining that only after a disability has been proven must a covered entity engage in any interactive process. The correct understanding is that the process is triggered by a simple request, or by observation of matters that suggest an accommodation may be required, and that proof of disability must be disclosed only when requested as part of the interactive process.

66. Mulrey emailed Evenson on May 11, 2021, seeking reconsideration of his order, and again stating the need for additonal time (20 days) to support the motion. As of this writing no further action has been taken.

## FIRST CAUSE OF ACTION: DISABILITY DISCRIMINATION

67. Plaintiff realleges all paragraphs above.

68. Defendant OLR discriminated against the Plaintiff based on her disability as demonstrated by its disparate treatment of complaints against her and Delyea, operating grossly to the disfavor of the disabled person as compared to her

19

Case 2:21-cv-00603-NJ   Filed 05/13/21   Page 18 of 20   Document 1

abled comparator. On information and belief, the OLR treats attorneys who rely on personal trauma as part of a defense as less credible and less worthy to practice than attorneys who do not display signs of such a disability.

69. Defendant OLR discriminated against the Plaintiff by failing to offer sufficient modifications of its procedures or to engage in any interactive process to determine the Plaintiff's need for an accommodation. These refusals occurred repeatedly despite increasingly clear and detailed requests and explanations.

70. The Plaintiff has suffered damages including harm to her reputation and professional prospects, and to her psychological, emotional and physical health.

71. The OLR's bad conduct of refusing to adhere to the ADA, grant a modification, or participate in the interactive process continues, and Plaintiff is at imminent risk of further reparable and irreparable harm.

## REQUESTED RELIEF

WHEREFORE Plaintiffs pray this honorable court grant the following relief:

A. Temporary equitable relief consisting of an order to defendants staying all disciplinary proceedings against Mulrey while this matter is pending.

B. Permanent equitable relief consisting of a voiding of prior actions by the OLR in Mulrey's disciplinary case, back to the point where she should first have been allowed greater accommodation than she received and hence ordering the OLR to either abandon the process or resume it at that point with untainted personnel responsible for subsequent decisions for the case.

C.  Allowable court costs and attorney fees.

D.  Compensatory damages reflecting the harms suffered by Mulrey.

E.  Exemplary damages to the extent of any egregious or wilful violations of the ADA by any of the defendants.

F.  Such other relief as the court deems appropriate.

Dated this 13th day of May, 2021.

Respectfully submitted,

SIDDIQUE LAW, LLC

/Gary Grass

_____

Gary Grass
Attorney for Plaintiff

SIDDIQUE LAW LLC
6060 N. 77th St.
Milwaukee, WI 53218
414-231-1635(main)
414-455-8087 / 324-9639 (Grass)
siddiquelawllc@gmail.com