UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MADALEINE MULREY,

    Plaintiff,

    v.                                      Case No. 21-CV-603

WISCONSIN OFFICE OF LAWYER REGULATION
and JAMES EVENSON,

    Defendants.

---

### DECISION AND ORDER ON DEFENDANTS'
### MOTION TO DISMISS COMPLAINT AND PLAINTIFF'S MOTION FOR TRO

---

Madaleine Mulrey sues the Wisconsin Office of Lawyer Regulation ("OLR") and OLR referee James Evenson for allegedly violating her rights under Title II of the Americans with Disabilities Act of 1990 ("ADA") during her ongoing state attorney disciplinary proceedings. (Compl., Docket # 1.) Mulrey seeks both injunctive relief and monetary damages. (*Id.*) Mulrey has also filed a motion for a temporary restraining order ("TRO") enjoining further action in those proceedings. (Docket # 15.)

As to Mulrey's claim for injunctive relief under the ADA, the defendants move to dismiss Mulrey's complaint based on the *Younger v. Harris*, 401 U.S. 37 (1971) doctrine of abstention. Additionally, they move to dismiss Mulrey's ADA claim seeking monetary relief on the grounds that the OLR is immune from damages under the Eleventh Amendment and Evenson is immune from suit under SCR 21.19 and quasi-judicial immunity. (Docket # 11.) For the reasons explained below, defendants' motion to dismiss is granted in part and denied in part. As to Mulrey's request for injunctive relief, the ADA claim is dismissed and

the request for a TRO is denied. However, as to Mulrey's request for monetary damages, the motion is denied and the case is stayed pending the outcome of her state proceedings.

## BACKGROUND

Mulrey is an attorney licensed to practice in the State of Wisconsin. (Compl. ¶ 4.) She alleges disability under the ADA due to post-traumatic stress disorder ("PTSD"). (*Id.* ¶ 6.) Mulrey alleges that from 2017-2018, she shared a house with fellow attorney Anthony Delyea and in 2017, Mulrey became a witness against Delyea in a family court matter. (*Id.* ¶ 11.) As a result, Delyea allegedly became increasingly hostile to her and in 2018, became extremely abusive, sabotaging two cases in which he represented Mulrey, and terrorizing her until she first abandoned her home office and then was ultimately forced to flee the state. (*Id.*)

On January 3, 2018, Kyle Herman hired Mulrey to represent him regarding two municipal citations he had received. (*Id.* ¶ 17.) Mulrey met with the assistant city attorney who offered to hold the case open and dismiss or amend the charges after a year of good behavior. (*Id.*) Mulrey encouraged Herman to accept the offer. (*Id.*) However, in May and June 2018, Mulrey missed two court appearances in Herman's case, leading to a default judgment being issued on June 28, 2018. (*Id.* ¶ 18.) Mulrey alleges that the missed court appearances were due to traumas she experienced within 24 hours of the hearings. (*Id.*) Although Mulrey alleges that she made multiple attempts to reopen the matter, in February 2019, Herman learned that the case had not been reopened and discharged Mulrey. (*Id.* ¶ 21.) Mulrey sent Herman her final bill. (*Id.*)

On February 11, 2019, Herman filed an OLR complaint against Mulrey for allegedly mishandling his case. (*Id.* ¶ 29.) Around March 1, 2019, Mulrey's case was assigned to

Jonathan Zeisser for intake, and Zeisser requested Mulrey respond to the grievance by March 15, 2019. (*Id.* ¶ 30.) Mulrey requested and received a short extension to respond and explained her defense to Herman's allegations. (*Id.* ¶ 32.)

On April 16, 2019, Kenneth Broderick was assigned as the OLR investigator. (*Id.* ¶ 33.) Broderick sought additional information from Mulrey, giving her until May 16 to further respond. (*Id.*) On May 13, 2019, Mulrey called the OLR and asked for an extension, which was granted until May 31. (*Id.*) On June 3, 2019, Mulrey called and again asked for additional time, stating that she lacked reliable internet access. (*Id.* ¶ 34.) Mulrey was given until June 17 to respond. (*Id.*)

Up to this point, Mulrey states that her extension requests did not mention her alleged PTSD; however, she alleges that her failure to inform the OLR was because she was avoiding recollecting her trauma so as not to trigger her PTSD symptoms. (*Id.* ¶ 35.) Although Mulrey composed a 29-page response and attempted to email it on June 17, she later learned that the OLR never received it because the email had been conserved in her Gmail outbox. (*Id.* ¶ 36.)

Sometime between June 17 and 24, 2019, Mulrey alleges that she called the OLR and discussed with Broderick how, in order to respond to the OLR allegations, she was forced to recall traumatic events. (*Id.* ¶ 37.) On June 24, 2019, Mulrey alleges that Broderick emailed her seeking a response by July 5, 2019 and threatening to invoke suspension of her law license for noncompliance. (*Id.* ¶ 39.) On June 26, Mulrey left Broderick a voicemail stating that she had received the letter but was having computer difficulties, and promised to mail a hard copy or thumb drive with her response. (*Id.*)

In late June or early July 2019, Mulrey had oral surgery. (*Id.* ¶ 40.) Although she alleges that she mailed her response on July 1, 2019, the OLR did not receive it. (*Id.*) On July 23, 2019, the OLR filed a motion with the Wisconsin Supreme Court to issue an order to show cause as to why Mulrey's law license should not be temporarily suspended for noncompliance with the investigation. (*Id.* ¶ 41.) The order was granted on July 25 and sent to Mulrey, but was returned as undeliverable on August 5, 2019. (*Id.*)

On August 6, 2019, Mulrey emailed Broderick her 29-page response to the grievance. (*Id.* ¶ 42.) Following her response, the OLR sought to withdraw its motion to the supreme court and the matter was dismissed. (*Id.* ¶ 43.) On January 3, 2020, Broderick issued and sent Mulrey a preliminary staff investigative report, finding that she violated several rules applicable to attorneys. (*Id.* ¶ 44.) Mulrey was given until January 17, 2020 to respond and on January 14, she contacted Broderick asking for an additional 30 days. (*Id.* ¶ 45.) Broderick agreed to extend her deadline by two weeks. (*Id.*) Mulrey again requested more time on February 3, citing the effects of a back injury from May 2018. (*Id.* ¶¶ 45–46.) This extension request was denied. (*Id.*) On February 17, 2020, Broderick sent Mulrey a "consent private reprimand offer" and gave her ten days to respond. (*Id.* ¶ 47.)

In March 2020, due to the ongoing Covid-19 pandemic, all matters related to the Herman grievance slowed. (*Id.* ¶ 52.) On April 7, 2020, Mulrey emailed Broderick requesting more time, this time specifically citing the ADA and stating that more time to respond would be a sufficient accommodation for her alleged disability. (*Id.* ¶ 53.) Broderick responded, but allegedly failed to respond to the accommodation request. (*Id.* ¶ 54.) Over the next six months, the case was presented to the Preliminary Review Committee, who

found cause to proceed. (*Id.* ¶ 55.) Mulrey was again offered a consensual reprimand in July 2020, but rejected it. (*Id.*)

Kim Kluck was assigned to litigate this matter for the OLR. (*Id.* ¶ 56.) On October 8, 2020, the OLR filed its complaint against Mulrey in the Wisconsin Supreme Court and Mulrey was personally served on December 23, 2020. (*Id.*) Evenson was appointed as referee on January 12, 2021, the same day an answer was due. (*Id.*) On January 22, 2021, Mulrey emailed Kluck asking for more time as an ADA accommodation. (*Id.* ¶ 57.) Kluck stated that she would not object to the timeliness of Mulrey's answer if she provided it within the next 25 days; however, the OLR would not consider any further requests for additional time. (*Id.* ¶ 58.) Mulrey could, however, request more time directly from Evenson. (*Id.*)

On February 9, 2021, Mulrey alleges that she repeated her request for more time as an ADA accommodation to Evenson, and Evenson continued the matter to March 2, 2021. (*Id.* ¶ 59.) On February 25, 2021, Kluck filed a motion for default judgment against Mulrey for failing to submit an answer. (*Id.* ¶ 60.) On March 1, 2021, Mulrey made another request for an accommodation from both Evenson and Kluck. (*Id.* ¶ 61.) On March 2, Evenson responded by asking Mulrey to supply by March 18, 2021 any documentation she wished to be considered at a hearing on default judgment (but did not specifically address the ADA issue). (*Id.* ¶ 62.) The hearing was continued and the document deadline extended to March 23, 2021, at which time Mulrey submitted the only document she had, an "extremely terse year-old document . . . stating her need for 'extra time to complete tasks'" and explaining why she did not have more documentation regarding her medical condition. (*Id.* ¶ 63.)

On May 10, 2021, Evenson found Mulrey in default and indicated that he would send his report and recommendation to the Wisconsin Supreme Court "soon." (*Id.* ¶ 64.) The next day, Mulrey sought reconsideration and asked for an additional 20 days to support the motion. (*Id.* ¶ 66.) Mulrey was granted the extension and allowed to submit her materials by June 2, 2021. (Pl.'s Mot. for Temporary Restraining Order ¶ 3, Docket # 15.) The court received briefs, held a hearing on the matter, and requested additional briefs, due August 6, 2021. (*Id.*) As of the date of this decision, Evenson has yet to rule on the motion for reconsideration. (*Id.* ¶ 4.)

## APPLICABLE RULE

The defendants move to dismiss Mulrey's complaint based on two separate doctrines. As to her ADA claim seeking injunctive relief, they move for dismissal based on the ongoing state attorney disciplinary proceedings pursuant to the abstention principle of *Younger v. Harris*, 401 U.S. 37 (1971). However, as to her ADA claim seeking monetary relief, they move for dismissal based on sovereign and quasi-judicial immunity.

A motion to dismiss based on an abstention doctrine raises the question of whether a court should exercise subject matter jurisdiction. *Miller Brewing Co. v. ACE U.S. Holdings, Inc.*, 391 F. Supp. 2d 735, 739 (E.D. Wis. 2005). In reviewing a Rule 12(b)(1) motion, I look both to the allegations in the complaint and to other materials relating to the exercise of jurisdiction. *Id.* Thus, I may look to Mulrey's filings accompanying her motion for a TRO, as well as the allegations in the complaint, without converting the motion into one for summary judgment. *Id.* I must take the plaintiff's allegations as true and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Id.*

A motion to dismiss based on sovereign immunity, however, is properly brought pursuant to Rule 12(b)(6) for failure to state a claim. *See Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 822 (7th Cir. 2016) ("[T]his circuit has clearly held that the question of sovereign immunity is not a jurisdictional one."); *Freeman v. Univ. of Illinois at Chicago*, No. 17 C 1776, 2018 WL 701282, at *2 (N.D. Ill. Jan. 29, 2018) ("The court initially notes that a motion to dismiss based on sovereign immunity should be brought pursuant to Rule 12(b)(6) rather than Rule 12(b)(1).") To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must satisfy Rule 8(a) by providing a "short and plain statement of the claim showing that the pleader is entitled to relief. . . in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley vs. Gibson*, 355 U.S. 41, 47 (1957)). Additionally, the allegations must suggest that the plaintiff is entitled to relief beyond the speculative level. *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007). The Court must construe the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).

## ANALYSIS

1. *The Younger Abstention Doctrine*

Again, the defendants move to dismiss Mulrey's ADA claim seeking injunctive relief pursuant to the *Younger* abstention doctrine. In *Younger*, the Supreme Court articulated the general principle that "Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." 401 U.S. at 43. The United States Supreme Court has emphasized that "*Younger* . . . and its progeny

espouse a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). In *Middlesex*, the Supreme Court explained that under the *Younger* doctrine, a district court must abstain from enjoining ongoing state proceedings that: "(1) are judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances exist which would make abstention inappropriate." *Parejko v. Dunn Circuit Court*, 209 F. App'x 545, 546 (7th Cir. 2006) (citing *Middlesex Cty. Ethics Comm.*, 547 U.S. at 437). Also in *Middlesex*, the Supreme Court specifically found that the *Younger* abstention doctrine applies to state attorney disciplinary proceedings. 457 U.S. 433–35. The Court stated that:

> The importance of the state interest in the pending state judicial proceedings and in the federal case calls *Younger* abstention into play. So long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain.

*Id.* at 435.

Mulrey's principal argument against abstention is that she does not challenge the entire attorney disciplinary system as a whole, but only seeks to require enforcement of her rights under the ADA, an "un-*Younger*- like" situation. (Pl.'s Resp. Br. at 7, Docket # 17.) But it is not necessary for one to challenge the foundation of the state system as a whole to invoke *Younger*. The Supreme Court has already determined that *Younger* applies to state attorney disciplinary proceedings. As such, *Younger* clearly applies to this situation.

Thus, I must abstain under *Younger* unless an exception applies making abstention inappropriate. Mulrey argues that she lacks an appropriate forum to address her ADA

claims because she made multiple requests for accommodations with the OLR and it repeatedly failed to engage in the ADA's interactive process. (*Id.* at 8.) I disagree. Both parties have briefed the issue of Mulrey's ADA claim before the OLR in her motion for reconsideration of Evenson's decision on the default judgment. (Docket # 17-3.) Evenson has not yet decided this motion and even after he issues his report and recommendation to the Wisconsin Supreme Court, Mulrey is free to file an appeal. SCR 22.17(1). Thus, *Younger*'s underlying principles of comity, equity, and federalism counsel me to abstain from exercising jurisdiction over Mulrey's ADA claim seeking injunctive relief.

　　2.　　*Sovereign and Quasi-Judicial Immunity Defenses*

The defendants further move to dismiss Mulrey's ADA claim seeking money damages on the grounds that the OLR has sovereign immunity under the Eleventh Amendment and Evenson is immune from suit under SCR 21.19 and through quasi-judicial immunity.[1] (Docket # 11 at 13–18.) Mulrey argues that immunity does not apply in this situation; thus, given her claim for monetary relief, it would be improper to dismiss the entire case. (Docket # 17 at 4.)

It is true that "in the context of the *Younger* abstention doctrine—staying the case, rather than an all-out dismissal of a claim, is the proper disposition where a plaintiff seeks compensatory damages. This is because the plaintiff cannot obtain money damages as part of the ongoing state court action." *J.B. v. Woodard*, 997 F.3d 714, 724–25 (7th Cir. 2021). "When a federal court is deciding whether *Younger* abstention is appropriate in a particular

---

[1] Mulrey argues that because the defendants argued Eleventh Amendment immunity only as to the OLR and not to Evenson (to who they argue quasi-judicial immunity), that the defendants waived a defense of Eleventh Amendment immunity as to Evenson. (Docket # 17.) Defendants argue that they mistakenly believed that Mulrey sued Evenson only in his personal, rather than official, capacity, but intends to argue Eleventh Amendment immunity as to both defendants. (Docket # 18 at 4 n.1.) I do not find Evenson waived his Eleventh Amendment immunity defense. As Evenson states, he can raise the defense in a motion for judgment on the pleadings after an answer is filed. (*Id.*)

9
Case 2:21-cv-00603-NJ   Filed 08/13/21   Page 9 of 13   Document 19

case, it must determine that *both* the relief sought and the ongoing state proceedings warrant the application of the *Younger* principle." *Am. Fed'n of State, Cty. & Mun. Emps. v. Tristano*, 898 F.2d 1302, 1305 (7th Cir. 1990) (emphasis in original).

Thus, whether I dismiss the case without prejudice or stay the case pending resolution of Mulrey's underlying state attorney disciplinary proceedings depends on the defendants' claims for sovereign immunity. The parties dispute the applicable controlling law. Mulrey contends the sovereign immunity defense falls under *Tennessee v. Lane*, 541 U.S. 509 (2004), whereas the defendants argue *United States v. Georgia*, 546 U.S. 151 (2006) controls.

In *Lane*, the plaintiffs filed suit against the State of Tennessee and several counties alleging violations of Title II of the ADA. Both plaintiffs were paraplegics who used wheelchairs for mobility and alleged they were denied access to the courts when compelled to appear on the second floor of a courthouse lacking an elevator. The State moved to dismiss on the ground suit was barred by the Eleventh Amendment. The Supreme Court held that "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment," 541 U.S. at 533–34, and thus sovereign immunity was abrogated in that situation.

In *Georgia*, the plaintiff, also a paraplegic, sued the State of Georgia under Title II of the ADA, challenging the conditions of confinement in a Georgia prison. The State defendants moved to dismiss plaintiff's Title II claim for money damages on sovereign immunity grounds. The Supreme Court concluded that Title II abrogates state sovereign

immunity for conduct in which the State violates the Fourteenth Amendment. 546 U.S. at 159. Thus, in assessing a plaintiff's complaint, the court must determine:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* The defendants argue that *Lane* is inapposite because Mulrey does not claim lack of access to the courts. They further argue that they are immune under *Georgia* because Mulrey does not allege violations of the Fourteenth Amendment. (Docket # 11 at 13–17.)

I agree that Mulrey's complaint, in its current form, does not allege lack of access to the state attorney disciplinary process and she concedes that she "has not attempted to state a Fourteenth Amendment claim here, and thus probably fell well short of pleading standards for such claims, but she likely could have done so." (Docket # 17 at 13.) However, the Seventh Circuit instructs that when a plaintiff's complaint is dismissed under Rule 12(b)(6), the general rule is to give at least one opportunity to amend the complaint before the entire action is dismissed. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana,* 786 F.3d 510, 519 (7th Cir. 2015). The court has stated that unless "it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Id.* (emphasis in original). Because I do not find that it is certain that any amendment would be futile, I will not dismiss the entire action. Rather, I will stay the action pending the outcome of the state attorney disciplinary proceedings. After the conclusion of those proceedings, Mulrey will be allowed to amend her complaint regarding her ADA claim for money damages.

## CONCLUSION

Mulrey is the subject of ongoing state attorney disciplinary proceedings. She alleges that the OLR and Evenson have violated her rights under the ADA by failing to engage in the interactive process regarding her request for an accommodation for her alleged PTSD and requests both injunctive relief and money damages. Because Mulrey has raised and is currently litigating her ADA request before the state courts, I find, pursuant to *Younger*, that abstention is appropriate and will not enjoin the state attorney disciplinary proceedings. However, as Mulrey also seeks compensatory damages under the ADA, relief not available through those state proceedings, I will stay Mulrey's disability discrimination claim pending conclusion of her state court proceedings.

The case will be administratively closed. Mulrey is ordered to notify the Court within twenty (20) days of the conclusion of the state court proceedings so that her ADA claim for compensatory damages may be reinstated. Failure to timely notify the Court will result in dismissal of the action for failure to prosecute.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion to dismiss (Docket # 10) is **GRANTED IN PART AND DENIED IN PART**. As to Mulrey's claim for disability discrimination under the ADA requesting equitable relief, the claim is dismissed. However, as to her claim for disability discrimination under the ADA requesting monetary relief, the claim is stayed pending resolution of her underlying state proceedings.

**IT IS FURTHER ORDERED** that Mulrey's motion for a TRO (Docket # 15) is **DENIED**.

**IT IS FURTHER ORDERED** that this case be administratively closed pending resolution of the underlying state attorney disciplinary proceedings. Mulrey is ordered to notify the Court within twenty (20) days of the conclusion of the state court proceedings so that her ADA claim for compensatory damages may be reinstated. Failure to timely notify the Court will result in dismissal of the action for failure to prosecute.

**IT IS FURTHER ORDERED** that the status conference set for August 24, 2021 is **REMOVED** from the calendar.

Dated at Milwaukee, Wisconsin this 13th day of August, 2021.

BY THE COURT

NANCY JOSEPH
United States Magistrate Judge