# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MADALEINE MULREY,

    Plaintiff,

  v.                                                    Case No. 21-CV-603

WISCONSIN OFFICE OF LAWYER REGULATION
and JAMES EVENSON,

    Defendants.

## DECISION AND ORDER ON DEFENDANTS'
## MOTION TO DISMISS AMENDED COMPLAINT

      Madaleine Mulrey sues the Wisconsin Office of Lawyer Regulation ("OLR") and OLR referee James Evenson for allegedly violating her rights under Title II of the Americans with Disabilities Act of 1990 ("ADA") and under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Mulrey seeks monetary relief for the alleged violations. (Am. Compl. at 24, Docket # 36-2.) The defendants move to dismiss Mulrey's amended complaint on the grounds that the ADA claim is barred by sovereign immunity and that Mulrey has not sought leave to amend her complaint to add a new cause of action under the Rehabilitation Act. (Docket # 38.) Alternatively, Defendants argue that Mulrey's Rehabilitation Act claim fails to state a claim upon which relief may be granted. (*Id.*)

      For the reasons further explained below, Mulrey's amended complaint is dismissed with prejudice for failure to state a claim upon which relief may be granted.

## BACKGROUND

Mulrey is an attorney licensed to practice in the State of Wisconsin. (Compl. ¶ 4.) She alleges disability under the ADA due to post-traumatic stress disorder ("PTSD"). (*Id.* ¶ 5.) Mulrey alleges that from 2017-2018, she shared a house with fellow attorney Anthony Delyea and in 2017, Mulrey became a witness against Delyea in a family court matter. (*Id.* ¶ 11.) As a result, Delyea allegedly became increasingly hostile to her and in 2018, became extremely abusive, sabotaging two cases in which he represented Mulrey, and terrorizing her until she first abandoned her home office and then was ultimately forced to flee the state. (*Id.*) Mulrey made various contemporaneous reports to law enforcement, and obtained a restraining order and domestic abuse injunction against Delyea in July 2018. (*Id.* ¶ 12.) Mulrey asserts that she was unsuccessful in receiving protection from law enforcement so that she could return to the premises to retrieve her property, including her client files. (*Id.* ¶¶ 12–13.) Mulrey alleges that this traumatic experience became a trigger for her PTSD. (*Id.* ¶ 13.)

On January 3, 2018, Kyle Herman hired Mulrey to represent him regarding two municipal citations he had received. (*Id.* ¶ 17.) Mulrey met with the assistant city attorney who offered to hold the case open and dismiss or amend the charges after a year of good behavior. (*Id.*) Mulrey encouraged Herman to accept the offer. (*Id.*) However, in May and June 2018, Mulrey missed two court appearances in Herman's case, leading to a default judgment being issued on June 28, 2018. (*Id.* ¶ 18.) Mulrey asserts that neither she nor Herman received written notice of the default and Mulrey did not learn of the default until she followed up on the matter sometime around the end of August 2018. (*Id.*) Mulrey states that she informed Herman of the case status, and advised that if he was willing to accept the

City's earlier offer, opposing counsel would likely not object to reopening the case. (*Id.* ¶ 19.)

Mulrey alleges that she confirmed Herman's intention to accept the previous offer around September 28, 2018, and contacted the assistant city attorney, who did not object to this plan. (*Id.*) Mulrey states that the assistant city attorney requested the motion to reopen be deferred for three to four weeks, as she was going on maternity leave and needed to assign successor counsel. (*Id.*) Mulrey asserts that in November 2018, she attempted to reopen the case by filing by fax; however, the fax was not docketed because it lacked the accompanying filling fee. (*Id.* ¶ 20.) On February 1, 2019, Herman spoke to the city attorney's office directly regarding his case, and then called Mulrey. (*Id.* ¶ 21.) Upon learning that the case had not been reopened, Mulrey offered to file again to seek to reopen the case. (*Id.*) Mulrey alleges that Herman instead demanded that she return the money he had paid for legal services rendered within one week, or he would discharge her. (*Id.*) One week later Herman did discharge her, and Mulrey sent him a final bill. (*Id.*) Herman subsequently reopened the case on his own and was able to obtain the same resolution Mulrey had negotiated for him with the city attorney. (*Id.* ¶ 22.)

At the same time Mulrey was representing Herman in his municipal case, on June 6 and 7, 2018, Mulrey visited the OLR to initiate a complaint against Delyea for allegedly eavesdropping on her. (*Id.* ¶ 23.) Mulrey met with Cynthia Schalley for several hours and provided documents in support of her claims. (*Id.*) Mulrey was instructed to re-initiate her grievance by telephone, upon which new staff would be assigned. (*Id.*) Mulrey alleges that her grievance against Delyea identified a variety of unethical acts and omissions on his part,

including interfering with her access to her files, initiating frivolous and vexatious legal process against her, and engaging in criminal and other misconduct. (*Id.* ¶ 24.)

Mulrey alleges that Kathryn Galarowicz was assigned as intake investigator with respect to her grievance against Delyea. (*Id.* ¶ 25.) On October 16, 2018, Mulrey called the OLR and spoke to Galarowicz, providing information regarding her complaint and identifying numerous documents previously provided. (*Id.*) Mulrey provided further documentation in November. (*Id.*) Mulrey alleges that she was not given a copy of Delyea's response to her grievance, nor given an opportunity to respond. (*Id.* ¶ 26.) Mulrey is unaware whether the OLR fully acted upon or resolved her grievance against Delyea. (*Id.* ¶ 27.)

On February 11, 2019, Herman filed an OLR complaint against Mulrey for allegedly mishandling his case. (*Id.* ¶ 29.) Around March 1, 2019, Mulrey's case was assigned to Jonathan Zeisser for intake, and Zeisser requested Mulrey respond to the grievance by March 15, 2019. (*Id.* ¶ 30.) On April 16, 2019, Kenneth Broderick was assigned as the OLR investigator. (*Id.* ¶ 33.) Broderick sought additional information from Mulrey, giving her until May 16 to further respond. (*Id.*)[1] On May 13, 2019, Mulrey called the OLR and asked for an extension, which was granted until May 31. (*Id.* ¶ 34.) On June 3, 2019, Mulrey called and again asked for additional time, stating that she lacked reliable internet access. (*Id.*) Mulrey was given until June 17 to respond. (*Id.*)

Up to this point, Mulrey states that her extension requests did not mention her alleged PTSD; however, she alleges that her failure to inform the OLR was because she was

---

[1] Mulrey's Amended Complaint appears to be missing a page, as her allegations jump from paragraph 30 to paragraph 34. (Docket # 36-2 at 10–11.) Given these allegations of background facts are substantially similar to those alleged in her original complaint, I cite to paragraph 33 from the original complaint to maintain the continuity of facts.

4

avoiding recollecting her trauma so as not to trigger her PTSD symptoms. (*Id.* ¶ 35.) Although Mulrey composed a 29-page response and attempted to email it on June 17, she later learned that the OLR never received it because the email had been conserved in her Gmail outbox. (*Id.* ¶ 36.)

Sometime between June 17 and 24, 2019, Mulrey alleges that she called the OLR and discussed with Broderick how, in order to respond to the OLR allegations, she was forced to recall traumatic events. (*Id.* ¶ 37.) On June 24, 2019, Mulrey alleges that Broderick emailed her seeking a response by July 5, 2019 and threatening to invoke suspension of her law license for noncompliance. (*Id.* ¶ 39.) On June 26, Mulrey left Broderick a voicemail stating that she had received the letter but was having computer difficulties, and promised to mail a hard copy or thumb drive with her response. (*Id.*)

In late June or early July 2019, Mulrey had oral surgery. (*Id.* ¶ 40.) Although she alleges that she mailed her response on July 1, 2019, the OLR did not receive it. (*Id.*) On July 23, 2019, the OLR filed a motion with the Wisconsin Supreme Court to issue an order to show cause as to why Mulrey's law license should not be temporarily suspended for noncompliance with the investigation. (*Id.* ¶ 41.) The order was granted on July 25 and sent to Mulrey, but was returned as undeliverable on August 5, 2019. (*Id.*)

On August 6, 2019, Mulrey emailed Broderick her 29-page response to the grievance. (*Id.* ¶ 42.) Following her response, the OLR sought to withdraw its motion to the supreme court and the matter was dismissed. (*Id.* ¶ 43.) On January 3, 2020, Broderick issued and sent Mulrey a preliminary staff investigative report, finding that she violated several rules applicable to attorneys. (*Id.* ¶ 44.) Mulrey was given until January 17, 2020 to respond and on January 14, she contacted Broderick asking for an additional 30 days. (*Id.* ¶ 45.)

Broderick agreed to extend her deadline by two weeks. (*Id.*) Mulrey again requested more time on February 3, citing the effects of a back injury from May 2018. (*Id.* ¶¶ 45–46.) This extension request was denied. (*Id.*) On February 17, 2020, Broderick sent Mulrey a "consent private reprimand offer" and gave her ten days to respond. (*Id.* ¶ 47.)

In March 2020, due to the ongoing Covid-19 pandemic, all matters related to the Herman grievance slowed. (*Id.* ¶ 52.) On April 7, 2020, Mulrey emailed Broderick requesting more time, this time specifically citing the ADA and stating that more time to respond would be a sufficient accommodation for her alleged disability. (*Id.* ¶ 53.) Broderick responded, but allegedly failed to respond to the accommodation request. (*Id.* ¶ 54.) Over the next six months, the case was presented to the Preliminary Review Committee, who found cause to proceed. (*Id.* ¶ 55.) Mulrey was again offered a consensual reprimand in July 2020, but rejected it. (*Id.*)

Kim Kluck was assigned to litigate this matter for the OLR. (*Id.* ¶ 56.) On October 8, 2020, the OLR filed its complaint against Mulrey in the Wisconsin Supreme Court and Mulrey was personally served on December 23, 2020. (*Id.*) Evenson was appointed as referee on January 12, 2021, the same day an answer was due. (*Id.*) On January 22, 2021, Mulrey emailed Kluck asking for more time as an ADA accommodation. (*Id.* ¶ 57.) Kluck stated that she would not object to the timeliness of Mulrey's answer if she provided it within the next 25 days; however, the OLR would not consider any further requests for additional time. (*Id.* ¶ 58.) Mulrey could, however, request more time directly from Evenson. (*Id.*)

On February 9, 2021, Mulrey alleges that she repeated her request for more time as an ADA accommodation to Evenson, and Evenson continued the matter to March 2, 2021.

(*Id.* ¶ 59.) On February 25, 2021, Kluck filed a motion for default judgment against Mulrey for failing to submit an answer. (*Id.* ¶ 60.) On March 1, 2021, Mulrey made another request for an accommodation from both Evenson and Kluck. (*Id.* ¶ 61.) On March 2, Evenson responded by asking Mulrey to supply by March 18, 2021, any documentation she wished to be considered at a hearing on default judgment (but did not specifically address the ADA issue). (*Id.* ¶ 62.) The hearing was continued and the document deadline extended to March 23, 2021, at which time Mulrey submitted the only document she had, an "extremely terse year-old document . . . stating her need for 'extra time to complete tasks'" and explaining why she did not have more documentation regarding her medical condition. (*Id.* ¶ 63.)

On May 10, 2021, Evenson found Mulrey in default and indicated that he would send his report and recommendation to the Wisconsin Supreme Court "soon." (*Id.* ¶ 64.) The next day, Mulrey sought reconsideration and asked for an additional 20 days to support the motion, which Mulrey alleges was denied. (*Id.* ¶ 66.)

On March 20, 2024, the supreme court issued a decision, concluding Mulrey's state proceedings. *Office of Lawyer Regulation v. Madaleine R. Mulrey*, Appeal No. 2020AP001651 (Wis. S. Ct. Mar. 20, 2024).

**APPLICABLE RULE**

Defendants move to dismiss Mulrey's ADA claim based on sovereign immunity. A motion to dismiss based on sovereign immunity is properly brought pursuant to Rule 12(b)(6) for failure to state a claim. *See Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 822 (7th Cir. 2016) ("[T]his circuit has clearly held that the question of sovereign immunity is not a jurisdictional one."); *Freeman v. Univ. of Illinois at Chicago*, No. 17 C 1776, 2018 WL 701282, at *2 (N.D. Ill. Jan. 29, 2018) ("The court initially notes that a motion to

dismiss based on sovereign immunity should be brought pursuant to Rule 12(b)(6) rather than Rule 12(b)(1).") To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must satisfy Rule 8(a) by providing a "short and plain statement of the claim showing that the pleader is entitled to relief . . . in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley vs. Gibson*, 355 U.S. 41, 47 (1957)). Additionally, the allegations must suggest that the plaintiff is entitled to relief beyond the speculative level. *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007). The Court must construe the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).

## ANALYSIS

Mulrey sues under Title II of the ADA and § 504 of the Rehabilitation Act. Both provisions proscribe disability discrimination by a public entity in providing services, programs, or activities. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794(a). The relief available under both provisions is "coextensive" and the "analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).

As an initial matter, Mulrey sues Evenson in his capacity as referee, or alternatively any successor to him in that capacity. Official capacity claims against state employees, however, are redundant of those asserted against the State. *See Reed v. Illinois*, 119 F. Supp. 3d 879, 883 (N.D. Ill. 2015) (dismissing ADA and Rehabilitation Act claims against individual state employees sued in their official capacities). Thus, Mulrey cannot proceed on

her claims against Evenson and I will address her claims solely against the OLR. Evenson is dismissed as a defendant.

> 1. *Defendants' Motion to Dismiss Rehabilitation Act Claim Based on Failure to Seek Leave to Amend under Fed. R. Civ. P. 15*

Defendants argue Mulrey's Rehabilitation Act claim should be dismissed because it was not within the parameters of what the August 13, 2021 decision and order allowed. Specifically, in her initial complaint, Mulrey brought a single claim against the defendants under Title II of the ADA. (Docket # 19 at 1.) Defendants moved to dismiss Mulrey's complaint. While Defendants' motion was granted as to Mulrey's claim for injunctive relief under the ADA, the motion was denied as to Mulrey's claim for money damages under the ADA. I noted, however, that in its current form, it appeared Mulrey's claims were barred by sovereign immunity. (*Id.* at 11.) Mulrey was given an opportunity to "amend her complaint regarding her ADA claim for money damages." (*Id.*)

After the conclusion of her state proceedings, Mulrey filed an amended complaint in which she both repleaded her Title II claim under the ADA and added a claim under § 504 of the Rehabilitation Act. (Docket # 36-2 at ¶¶ 72–76.) Mulrey argues that she believed she was permitted to bring a new claim under the Rehabilitation Act in her amended complaint because her former counsel "advised amendments could be made anytime." (Docket # 40-3 at 8.) Mulrey argues that she understood the August 13, 2021 order authorized her to amend her complaint regarding damages claims in general. (*Id.*) Regardless, Mulrey argues that the Rehabilitation Act claim should be included in her amended complaint because the claim arises from an identical factual basis as the ADA claim. (*Id.*)

I am unpersuaded that Mulrey, a trained attorney, was misled by the language of the August 13, 2021 order. Nor can Mulrey rest on her alleged unfamiliarity with civil litigation.

(*Id.* at 3, 8.) All *pro se* litigants are expected to follow the rules of civil procedure, *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006), and the fact Mulrey is an attorney presumably gives her the advantage of at least knowing where to look to find the applicable rules. Given Mulrey's amended complaint does not fall under Fed. R. Civ. P 15(a)(1), it falls under Fed. R. Civ. P. 15(a)(2), which allows amendment of a pleading only with the opposing party's written consent or with the court's leave. Mulrey sought neither.

That being said, Rule 15(a)(2) counsels that leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). And it is consistent with the "spirit" of the federal rules to have a decision on the merits rather than a dismissal based on technicalities. *See Foman v. Davis*, 371 U.S. 178, 181 (1962). The *Foman* Court held that if:

> [T]he underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* at 182. While Mulrey's reasons for adding a new cause of action without permission are weak at best, in this case, I will not dismiss the claim based on her procedural misstep. As stated above, the analysis under Title II of the ADA and § 504 of the Rehabilitation Act are virtually the same. Given both claims arise from the same set of facts, any prejudice to Defendants in defending the Rehabilitation Act claim is minimal. Thus, I will evaluate Defendants' alternative argument that the amended complaint fails to state a claim under the Rehabilitation Act.

*2. Discrimination under Title II of the ADA (Claim One)*

As an initial matter, Defendants argue that Mulrey's ADA claim is barred by sovereign immunity. Sovereign immunity under the ADA is a "thorny question." *Jaros*, 684 F.3d at 672. Congress may abrogate state sovereign immunity when exercising its enforcement power conferred by § 5 of the Fourteenth Amendment. *McDaniel v. Syed*, 115 F.4th 805, 820 (7th Cir. 2024). The ADA provides that: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." *Id.* (quoting 42 U.S.C. § 12202). The Supreme Court has recognized this statement as an unequivocal expression of Congress' intent to abrogate state sovereign immunity. *Id.* (citing *United States v. Georgia*, 546 U.S. 151, 154 (2006)). However, as the Seventh Circuit stated in *McDaniel*, whether Congress has "validly exercised its section 5 enforcement power in the ADA" is a "separate question." *Id.* The Supreme Court addressed the question of sovereign immunity in the context of the ADA in *Tennessee v. Lane*, 541 U.S. 509 (2004) and *United States v. Georgia*, 546 U.S. 151 (2006).

In *Lane*, the plaintiffs filed suit against the State of Tennessee and several counties alleging violations of Title II of the ADA. Both plaintiffs were paraplegics who used wheelchairs for mobility and alleged they were denied access to the courts when compelled to appear on the second floor of a courthouse lacking an elevator. The State moved to dismiss on grounds the suit was barred by the Eleventh Amendment.

In determining whether Title II was a valid exercise of Congress' § 5 enforcement power, the *Lane* Court articulated a three-step inquiry. 541 U.S. at 522. First, the court must identify the constitutional right or rights that Congress sought to enforce when it enacted

Title II. *Id.* Second, the court must identify the pattern of violations the legislation is designed to remedy and prevent. *Id.* at 524–29. And third, the court must determine whether the legislation is congruent with and proportional to the pattern of violations. *Id.* at 530–34. After considering the three-step inquiry articulated above, the *Lane* Court concluded that: "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." *Id.* at 533–34. Thus, sovereign immunity was abrogated in that case.

In *Georgia*, the plaintiff, also a paraplegic, sued the State of Georgia under Title II of the ADA, challenging the conditions of confinement in a Georgia prison. The State defendants moved to dismiss plaintiff's Title II claim for money damages on sovereign immunity grounds. The Supreme Court concluded that Title II abrogates state sovereign immunity for conduct in which the State violates the Fourteenth Amendment. *Id.* at 159. Thus, in assessing a plaintiff's complaint, the court must determine:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* The *Georgia* Court expressly declined, however, to decide whether states are immune from suits for damages arising from conditions that violate the ADA but not the Constitution. *See Jaros*, 684 F.3d at 672 n.5 (citing *Georgia*, 546 U.S. at 159).

Mulrey does not allege in her amended complaint that she was denied access to the courts, as in *Lane*. Rather, she alleges that the OLR treats abled comparators more favorably and that the OLR deprived her of any meaningful opportunity to participate in the

disciplinary proceedings by failing to offer sufficient modifications. (Am. Compl. ¶¶ 68–69, Docket # 40-3 at 7.) Thus, she argues that her ADA claim is predicated on conduct that violates both the ADA and the Fourteenth Amendment, abrogating sovereign immunity. (Docket # 40-3 at 8.)

I need not untangle the "thorny" issue of sovereign immunity because Mulrey's amended complaint fails to state a plausible claim under the ADA. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (stating that the court "shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted"). To state a *prima facie* case of discrimination under Title II, a plaintiff must show: (1) that she is a qualified individual with a disability; (2) that she was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) that the denial or discrimination was by reason of her disability. *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 853 (7th Cir. 2018). There are various methods of proof in Title II ADA claims, specifically, discrimination may be established by evidence that: (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people. *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999).

While Mulrey generally alleges that the OLR treats attorneys who have experienced personal trauma less favorably than those who do not have this specific disability and alleges as an example that the OLR treated her complaint against Delyea less favorably than it treated Herman's complaint against her (Am. Compl. ¶ 68), she alleges no OLR rule that disproportionally impacts the disabled. Rather, it appears Mulrey is asserting discrimination

based on failure to provide a reasonable modification. She alleges that the reasonable modification she requested under the ADA was additional time to file her documentation (Am. Compl. ¶¶ 45, 53, 57, 61) and argues that she was "repeatedly denied" this modification (Docket # 40-3 at 6).

A party, however, "may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). And in this case, Mulrey has done just that. While Mulrey alleges that she was repeatedly denied requests for additional time to respond throughout the disciplinary proceedings, the allegations in her amended complaint show otherwise. After Herman filed the initial OLR complaint against Mulrey in February 2019, Mulrey requested and was granted two extensions of time to file a response. (*Id.* ¶¶ 29–30.) Mulrey alleges that she attempted to email her 29-page response on the extended due date of June 17; however, due to an issue with Mulrey's email (thus, through no fault of the OLR), the email was never received. (*Id.* ¶¶ 34, 36.)

Despite the failure to file a response, Mulrey was given another extension until July 5, 2010. (*Id.* ¶ 39.) While she alleges that she mailed her response on July 1, she states that it was never received, though she does not allege that this was due to the fault of the OLR. (*Id.* ¶ 40.) After Mulrey failed to file a response, the OLR did file a motion to show cause with the Wisconsin Supreme Court; however, the OLR withdrew its motion after Mulrey was able to provide her 29-page response on August 6, 2019. (*Id.* ¶¶ 41–42.) In other words, during this initial investigation, Mulrey was provided multiple extensions and was not prevented from providing her 29-page response to Herman's complaint.

After the initial investigation was complete, Mulrey was provided the OLR's preliminary investigative report on January 3, 2020. (*Id.* ¶¶ 45–45.) Mulrey alleges that although there was no requirement to respond to this report (*id.* ¶ 53), she requested an extension of 30 days to respond (*id.* ¶ 53). While she was not granted a 30-day extension, she was granted a two-week extension. (*Id.* ¶ 45.) On February 3, Mulrey again asked for more time due to a back injury; however, this request was denied. (*Id.*) Thus, during this part of the OLR proceedings, once again, Mulrey was given additional time to respond and although she was denied a further extension on February 3, Mulrey alleges that this request was due to her back injury, not her alleged disability.

On February 17, 2020, Mulrey was presented with a consent private reprimand offer and was given 10 days to respond. (*Id.* ¶ 47.) Instead of responding to the offer, however, Mulrey sent an email on April 7, 2020, asking for more time to respond to the preliminary investigative report. (*Id.* ¶ 53.) The OLR responded by asking for her answer to the private reprimand offer. (*Id.* ¶ 54.) Because Mulrey did not respond to the offer, her case was presented to the preliminary review committee who found cause to proceed, and repeated the same private reprimand offer in July 2020. (*Id.* ¶ 55.)

While Mulrey asserts that Broderick never responded to her request for additional time to respond to the preliminary staff investigative report (*id.* ¶ 54), this is unsurprising, as that portion of the proceeding was completed after her second extension request was denied on February 3. Rather, the OLR was at the point of offering a private reprimand and giving her time to respond to that, which Mulrey never did. Thus, Broderick answered her email that "While you mention the preliminary staff investigative report that was sent to you on

January 3, 2020, your inquiry is silent as to your intentions regarding the consent private reprimand offer sent to you on February 17, 2020." (*Id.*)

Mulrey next alleges that the OLR filed a complaint against her in the Wisconsin Supreme Court and she was personally served on December 23, 2020. (*Id.* ¶ 56.) The answer was due on January 12, 2021. (*Id.*) Mulrey requested additional time to file her answer, to which the OLR responded by giving her an additional 25 days. (*Id.* ¶ 58.) Mulrey was told, however, that the OLR would not consider any further requests for additional time, but that she could ask the referee for more time if needed. (*Id.*)

Mulrey did not, however, file her answer within the next 25 days; thus, a motion for default judgment was entered against her. (*Id.* ¶ 60.) On March 1, 2021, Mulrey requested additional time to respond, to which the referee allowed Mulrey until March 18, 2021, to supply any additional documentation she wanted considered in conjunction with the default judgment motion. (*Id.* ¶¶ 61–62.) Mulrey's deadline was again extended until March 23, 2021, at which time she submitted a letter from her former doctor explaining that she needed extra time to complete tasks. (*Id.* ¶ 63.) On May 10, 2021, the referee found Mulrey in default and noted that he would send his report and recommendation to the Supreme Court "soon," and while Mulrey asked for additional time to seek reconsideration of the order, she alleges that this request was denied. (*Id.* ¶ 66.)

What Mulrey seeks as an accommodation is not simply additional time—she was granted that on multiple occasions throughout the disciplinary proceedings and given the opportunity to present her defense. Rather, what Mulrey seeks as an accommodation is as much time as *she* deems necessary to complete her response. But under Title II, a requested accommodation must be a reasonable one. *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*,

16

Case 2:21-cv-00603-NJ     Filed 06/03/25     Page 16 of 18     Document 44

465 F.3d 737, 751 (7th Cir. 2006). It is unreasonable to expect the OLR to extend Mulrey's disciplinary proceedings for as long as she sees fit. *See, e.g.*, *Mogan v. State Bar of California*, No. CV 23-930-MWF (PDX), 2023 WL 5505909, at *4 (C.D. Cal. July 7, 2023) (finding that the state also has a legitimate interest in expeditious resolution of attorney discipline proceedings). Thus, the facts as pleaded in the amended complaint affirmatively demonstrate that the OLR did not discriminate against Mulrey by refusing to provide a reasonable modification. For these reasons, Mulrey's amended complaint fails to state a claim under Title II of the ADA.

    3.    *Discrimination Claim Under Section 504 of the Rehabilitation Act (Claim Two)*

To state a claim under the Rehabilitation Act, a plaintiff must allege that she: (1) is a qualified person (2) with a disability and (3) was denied access to a program or activity because of her disability. *Jaros*, 684 F.3d at 672. "Refusing to make reasonable accommodations is tantamount to denying access." *Id.* Once again, Mulrey alleges that the OLR repeatedly denied her requests for additional time to respond throughout the pendency of the disciplinary proceedings. (Am. Compl. ¶ 75.) For the same reasons Mulrey has pleaded herself out of court on her ADA claim, she also has done so on her Rehabilitation Act claim. As explained above, the facts as alleged in Mulrey's amended complaint demonstrate that Mulrey was not repeatedly denied requests for additional time to respond and in fact was granted multiple requests for extensions of time. What Mulrey appears to contest is the OLR's refusal to grant her as many extensions as she saw fit. This is not a reasonable accommodation as the OLR must be allowed to move its disciplinary proceedings forward in a reasonable timeframe. Thus, Mulrey's amended complaint fails to state a claim under § 504 of the Rehabilitation Act.

## CONCLUSION

The allegations as pleaded in Mulrey's complaint fail to state a plausible claim for relief under either Title II of the ADA or under § 504 of the Rehabilitation Act. Rather, the facts, as alleged, establish that Mulrey was not denied a reasonable accommodation by the OLR. For these reasons, Mulrey's amended complaint is denied, with prejudice, for failure to state a claim.[2]

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss the Amended Complaint (Docket # 37) is **GRANTED**. The amended complaint is dismissed with prejudice for failure to state a claim. The clerk of court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Sur-Reply Brief (Docket # 42) is **DENIED**.

Dated at Milwaukee, Wisconsin this 3rd day of June, 2025.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge

---

[2] Mulrey also filed a motion for leave to file a sur-reply brief. (Docket # 42.) Mulrey's motion is denied.